**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

**TASHIANA L. HOLLEY**,
     *Plaintiff,*

vs.

**(1) CITY OF OKLAHOMA CITY –
PUBLIC WORKS DEPARTMENT**,

**(2) DANNY HERRERA**,
     Individually,

**(3) PAUL BRONSON**,
     Individually,

**(4) ERIC WENGER**,
     Individually,
     *Defendants.*

Case No.:

# COMPLAINT

COMES NOW the PLAINTIFF, TASHIANA L. HOLLEY (hereinafter "Plaintiff"), and for her cause of action against Defendants states as follows:

### PARTIES

1. Plaintiff, TASHIANA L. HOLLEY, is a Bi-Racial female, resident of Oklahoma County, Oklahoma, employed by Defendant as a Property Technician in its Public Works Department from February 2004 through July 2012, at which time she was terminated effective on or about the 16th day of July 2012.

2. Defendant (1), OKLAHOMA CITY-PUBLIC WORKS DEPARTMENT (hereinafter "Employer"), is upon information and belief a department of the City of Oklahoma City, established as a political subdivision under the laws of the State of Oklahoma, with its principle place of business in Oklahoma City, Oklahoma County, Oklahoma, which had in all weeks of the calendar years of Plaintiff's employment 300 or more employees.

3. Defendant (2), DANNY HERRERA (hereinafter "Herrera"), was and continues to

be a Property Analyst and Right-of-Way Manager employed by Defendant (1) and he was Plaintiff's direct supervisor.

4. Defendant (3), PAUL BRONSON (hereinafter "Bronson"), was and continues to be the Assistant Director of Public Works for Oklahoma City who was a supervisor of Plaintiff and the Equal Employment Opportunity Commission (EEOC) resource person for the Oklahoma City Public Works Department.

5. Defendant (4), ERIC WENGER (hereinafter "Wenger"), was and continues to be the Director of Public Works Department for Oklahoma City with ultimate responsibility for policies and practices and responsibility to implement policies to insure equal employment opportunities to Plaintiff and others similarly situated and to prevent there from being a "hostile" workplace.

6. Plaintiff brings claims against Defendants (2), (3), and (4) in their individual capacities.

7. Plaintiff seeks an award of damages against defendants with Joint and Several Liability.

## JURISDICTION AND VENUE

8. This is a cause of action for discrimination based on Race, Sex, and Retaliation as prohibited by Title VII of the Civil Rights Act of 1964 as amended; Violation of Family Medical Leave Act (FMLA); Violation of Title 42 U.S.C. §§ 1983 and 1985; Violation of the Oklahoma Anti-Discrimination Act (25 O.S. §1101, et seq); and other state laws based upon the supplemental jurisdiction of this court under 28 U.S.C. § 1367.

9. Jurisdiction over the federal claims is vested pursuant to 29 U.S.C. § 626(c), 42 U.S.C. § 12117(a), 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331.  The state law claims arise out of the same core of facts and jurisdiction over those claims is provided by 29 U.S.C. § 1367(b).

10. All of the actions complained of occurred in Oklahoma County, Oklahoma, and Defendants may be served in that county, wherefore venue is proper in this court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391.

11. Plaintiff has complied with the administrative prerequisites by filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC" Charge No. 564-2013-00112) attached hereto as ("Appendix-1").

12. The "Notice of Suit Rights" was issued and mailed to Plaintiff on or about the 23rd day of May 2013.

13. Plaintiff first received a copy of the "Notice of Suit Rights" or "right to sue letter" on or after the 25th day of May 2013. A copy of said "Notice" is attached hereto as ("Appendix-2") and incorporated herein by this reference.

14. The ninety (90) day period within which Plaintiff must file an action, pursuant to the "right to sue" letter, expires on or after the 21st day of August 2013.

**STATEMENT OF FACTS**

15. Plaintiff, began her employment with Defendant (1) the City of Oklahoma City in 2000 in another department, and she started working as a Property Technician in the property management section in February 2004.

16. Plaintiff's job status as a Property Technician was classified management non-exempt, vesting her with a property interest in her job.

17. As an employee for Defendant (1), Plaintiff was subjected to sexual harassment and discrimination by her immediate supervisor, Defendant (2).

18. As a result of the harassment and discrimination, in 2009 Plaintiff filed a charge of discrimination against the Public Works Department with the Office of the Equal Employment Opportunities Commission (EEOC charge number 564-2009-1304).

3

19. While there had long been a hostile workplace in violation of Title VII, after Plaintiff filed her charge in 2009, it became even more severe also constituting retaliation against her for filing a charge of discrimination.

20. Plaintiff filed a second (2nd) charge with the EEOC based on the retaliation (EEOC charge 564-2009-01651) in hopes the treatment would be addressed and cured.

21. Even following the filing of the second (2nd) charge of discrimination for retaliation, Defendant (1) sent Defendant (2) for training but he was NOT removed from a supervisory role over Plaintiff, and NO meaningful action was taken to address the violations of Title VII and other laws against workplace discrimination.

22. Plaintiff's child is severely disabled making it difficult for the child to interact socially with others because of the effects of having uncontrollable tantrums and physical altercations requiring Plaintiff to seek medical intervention during the night or prior to the child going to school.

23. Plaintiff also often has to obtain emergency care or respond to incidents at the child's school resulting in her sometimes late arrival to work.

24. Plaintiff sought and received "Intermittent Leave" under the Family Medical Leave Act (FMLA) while working for Defendant (1) in approximately 2005, and she utilized this leave during certain mornings when she was scheduled to work for Defendant (1).

25. Defendant (2) continued to engage in acts that created a hostile work environment for Plaintiff subjecting her to unequal terms and conditions of employment by refusing to assign her new work assignments while still assigning projects to other members of the property management section.

26. Defendant (2) repeatedly told other co-workers and members of the department not to work or communicate with Plaintiff, or they would likely face a charge of discrimination

or grievance as a consequence.

27. Defendant (2) constantly disputes Plaintiff's timesheets that she turns in for field work which has cost Plaintiff compensation for work done but disputed by him.

28. On the 15th of June 2012, Defendant (2) sent an email to Plaintiff's department Director [Defendant (4)], Assistant Director [Defendant (3)], and Assistant City Engineer substantively stating reasons why Mr. Herrera wanted to terminate Plaintiff's employment prior to her Job Performance meeting held on June 19, 2012 ("Appendix-3").

29. Included in the reasons giving by Mr. Herrera for terminating Plaintiff's employment were late check-ins when Plaintiff was allowed Intermittent FMLA to care for her disabled son.

30. Plaintiff's Jog Performance meeting was held on June 19, 2012 with Plaintiff being present at the meeting along with Defendant (4), Defendant (3), Defendant (2), Assistant City Engineer, and the City Clerk, and everyone in the meeting except for the City Clerk and Plaintiff had in hand a copy of Defendant (2)'s email referenced in paragraph 27.

31. Plaintiff requested a copy of the email from Defendant (2) at the meeting but was refused prompting her to make an Open Records request.

32. In June 2012, Plaintiff received an email from the City Clerk upon her request of the email that was also addressed to her department director, assistant director, assistant city engineer, and immediate supervisor, stating she could no longer file grievances to protest work related matters based on the ongoing treatment being received.

33. Plaintiff filed a third (3rd) charge with the EEOC (charge 564-2012-00167) after the email and meeting in June referenced above on or about June 26, 2012.

34. Plaintiff, hoping to transfer away from the problem(s), sought a transfer to a different position out of the Property Department (as a Survey Aide I) and shortly after filing for

the new job she was terminated on or about the 16th of July 2012, only three (3) days before the test for the new job would have been conducted on July 19, 2012.

35. The reason given Plaintiff for her termination was an allegation by Defendant (2) that Plaintiff was attempting to access the electronic accounts of other employees and for other unspecified insubordination.

36. Defendant (2) provided no proof that Plaintiff attempted to access electronic accounts of other employees.

37. Plaintiff filed her fourth (4th) charge with the EEOC (564-2013-00112) after being subjected to ongoing retaliation for filing Title VII charges due to her race and gender and for continuing to engage in protected activity of protesting the harassment received from Defendant (2).

38. Plaintiff's right to sue letter as noted above was issued on or about the 23rd day of May 2013 and received on or after that date, such that this action is timely filed within ninety (90) days of his receipt of the Right to Sue letter.

## *COUNT I*

### Violation of Title VII

Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

39. Plaintiff is a Bi-Racial female employee who, despite being more qualified and having more seniority, was given less opportunity than male or Caucasian employees.

40. Plaintiff performed the essential functions of her job as a Property Technician, with no adverse performance reviews or disciplinary action until after she filed a charge of harassment against Defendant (2).

41. Defendant (2) has made allegations that Plaintiff engaged in improper actions resulting in her being reassigned to even less favorable assignments and eventually preventing

6

her from receiving assignments all together, but all such allegations constitute pretext which along with failure to follow established policies should be viewed as being evidence of intentional discrimination.

42. Defendant (2) began a campaign of fault finding creating a hostile work environment for Plaintiff based on retaliation for filing a charge of discrimination.

43. Defendant (2) has made allegations that Plaintiff engaged in improper actions resulting in insubordination which should be considered evidence of pretext which along with failure to follow established policies both should be viewed as being evidence of intentional discrimination.

44. Defendants (2) had unilaterally informed other employees to not work with Plaintiff or she would file a grievance and claim discrimination.

## *COUNT II*

**VIOLATION OF FAMLY MEDICAL LEAVE ACT (FMLA) AND/OR INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER FMLA**

45. Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

46. Plaintiff was certified for intermittent medical leave for her minor child due to a severe health condition under the Family Medical Leave Act (FMLA).

47. When Plaintiff made the request to take leave with Defendant (2), Mr. Herrera would unreasonably deny Plaintiff's request and hinder her ability to attend to her child.

48. To this extent of interfering with the Family Medical Leave Act Plaintiff is: (1) a disabled person within the meaning of the ADA, or perceived as the same; (2) she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodations; and (3) the employer terminated her employment under the circumstances which give rise to an inference that the termination was based on her disability.

49. Under the ADA, upon a request being made for one or more accommodations, Defendant had a duty to provide an "interactive process" to discuss the requests and it is determined which ones or others will be offered the employee.

50. Despite her requests, <u>no</u> interactive process was opened and all requested accommodations were hindered or denied.

51. No interactive process was allowed and Plaintiff was not only denied her reasonable accommodation, she was retaliated against for seeking the same.

## *COUNT II*

### VIOLATION OF FAIR LABOR STANDARDS ACT

*52.*   Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

*53.*   Plaintiff had on many occasions been assigned and required to do field work as noted above and upon submission of her hours, Defendant (2), without justification would dispute her hours making it impossible to obtain pay for the work she performed on the field assignment.

*54.*   Defendant did NOT pay Plaintiff for work performed on field assignments, in some cases also depriving her of not just straight time but also time and one-half to the extent her total hours then exceeded forty (40) hours per week.

*55.*   Plaintiff contacted others with Defendant (1) seeking to obtain payment for the services she performed but nothing was done to resolve the apparent dispute as to the work performed but for which she was not paid.

*56.*   Plaintiff has incurred attorney fees and been forced to file this matter in an effort to obtain compensation for the hours she worked, Plaintiff should be awarded attorney fees and costs in this matter as authorized under the Fair Labor Standards Act (FLSA) plus such other different or additional relief available at law or equity.

## COUNT IV

### 42 U.S.C. §1983 (which provides)

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state … subjects or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding

57.   Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

58.   Plaintiff as a classified employee of the City of Oklahoma City had a vested property right in her continued employment.

59.   Plaintiff was entitled to use her Intermittent FMLA time as previously certified in relation to her Son's disability.

60.   Defendant (2) intentionally deprived Plaintiff from using her Intermittent FMLA time by unreasonably withholding approval for use of the time, inventing additional requirements to be satisfied prior to Plaintiff receiving approval interfering with her privacy, and reprimanding Plaintiff for times she had to exercise the FMLA.

61.   Defendant (2), under the awareness of Defendant (3) and (4), began targeting and searching for anything that could be considered a violation of Plaintiff in her use of FMLA time including making unreasonable requirements to report directly to Defendant (2) on the hour every hour of her employment.

62.   Defendant (3) and (4) as supervisors allowed, validated, supported and/or took part in this treatment.

63.   Plaintiff exercised FREE SPEECH in speaking out against Defendant (2), (3) AND (4) interfering with her rights under the FMLA and refusal to pay her for work she performed on assigned field work and other matters of public importance.

64.   In the light of pre-existing law, the unlawfulness of the actions of Defendant (2)

and the inaction of Defendants (3) and (4) to allow the treatment to continue had to be apparent.

65. Defendant (2) knew he was violating Plaintiff's right to free speech and violating her right NOT to be subjected to interference with Plaintiff's right to FMLA, even AFTER being told not to harass Plaintiff and sent to training, Defendant (2) still under color or his authority interfered with Plaintiff's constitutionally protected free speech and right to privacy.

66. Defendant (2) interfered with Plaintiff's right to receive DUE PROCESS of law during the "Due Process" hearing by working in concert with Defendant (3) to not allow Plaintiff a fair and unbiased tribunal.

67. Defendant (2) was acting under the color or law, and his actions deprived Plaintiff of her rights, privileges or immunities secured by the Constitution or laws of the United States.

68. Defendant (3) even after being shown there was no evidence Plaintiff violated the policy in which she was terminated, allowed the termination to proceed when the only witness was the accuser, Defendant (2).

69. The Acts of Defendant (2) and Defendant (3) were the proximate cause of injury and consequent damages to the provision of the public service it performs through its employees.

70. Plaintiff's position standing up to challenge of stopping harassment and discrimination in the workforce was a substantial or motivating factor in Plaintiff being given far less favorable assignments and being targeted for and ultimately terminated from her Property Technician position.

### *COUNT V*

#### 42 U.S.C. §1985 (which provides)

> Every person who, under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at

law, suit in equity, or other proper proceeding for redress…

71.    Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

72.    Defendants 2, and 3 (and others) worked in concert to deprive Plaintiff of her right to Due Process by interfering with her right to have a fair hearing on the evidence.

73.    The orchestrated actions of Defendants (2), (3), (4) and others, constitute a conspiracy to interfere with her right to due process in violation of §1985.

74.    Defendants utilized the very process that was intended to address Plaintiff's grievances in order to terminate her employment.

75.    The Due Process Clause of the Fourteenth Amendment prevents any state from depriving any person of life, liberty and property without "due process" of law.[13] The clause is not capable of technical conception, and cannot be transformed into a fixed formula for strict application by the courts.

76.    The interests protected interrelate to form one concept whose definition varies with every situation. Therefore, a plaintiff who pleads a due process violation is not required to plead, individually, the specific protections of life, liberty or property afforded by the due process clause.

77.    Plaintiff incorporates <u>all</u> prior allegations and further alleges that:

78.    Defendant's violated Plaintiff's:  <u>Equal Rights under the law</u> thus violating §1981.

79.    Plaintiff had a property right to her continued employment, which in relation to the <u>Property rights of citizens</u> constitutes a violation of §1982.

80.    These violations of her Equal rights and Property rights give rise to an action under §1983.

81.    The orchestrated actions of Defendants (2), (3), (4), and others, constitute a

11

conspiracy to interfere with civil rights under §1985.

82. Defendants utilized the very process that was intended to address Plaintiff's grievances in order to terminate her employment.

83. The United States Supreme Court case of Goldbery v. Kelly, 397 U.S. 254 and similar cases have established the essential requirements for administrative due process as:

1. An unbiased tribunal.
2. Notice of the proposed action and the grounds asserted for it.
3. Opportunity to present reasons why the proposed action should not be taken.
4. The right to present evidence, including the right to call witnesses.
5. The right to know opposing evidence.
6. The right to cross-examine adverse witnesses.
7. A decision based exclusively on the evidence presented.
8. Opportunity to be represented by counsel.
9. Requirement that the tribunal prepare a record of the evidence presented.
10. Requirement that the tribunal prepare written findings of fact and reasons for its decision.

84. Plaintiff's administrative hearing with the Grievance Review Board comprising the "step" scheme, did NOT insure "due process of law" and when Defendant (3) Paul Bronson, Assistant Director of the Public Works Department, was asked to review the decision of the administrative hearing, he failed to insure that any of the following irregularities were reversed:

[3] An unbiased tribunal

The tribunal was biased. It was led by, Paul Bronson, and attended by Danny Herrera, Jon Smith, and Ms. Holley. Mr. Smith of the Personnel Department stated his only purpose in being there was to ensure the pre-determination meeting was conducted according to personnel policy. There was no evidence presented or any witnesses except for the Ms. Holley's accuser, Danny Herrera.

[4] Notice of proposed action and the grounds asserted for it.

Ms. Holley was presented with notification of the pre-determination hearing and the basis of the alleged violation on the 7th day of July 2012, but Ms. Holley was not provided the grounds for asserting how she was "insubordinate" or "failure to follow the order of one's supervisor."

[5] The right to know opposing evidence.

Ms. Holley was not provided any information to the evidence that would be presented or used against her prior to the hearing. During the hearing no evidence was presented, except for statements made by Danny Herrera, who has been trying to terminate Ms. Holley's employment prior to the alleged incident.

[6] The right to cross-examine adverse witnesses.

The only adverse witness was the same as the accuser, Danny Herrera.

[7] A decision based exclusively on the evidence presented.

The decision to terminate Ms. Holley's employment was not based on the evidence presented but as Paul Bronson stated on the grievance and appeal of termination that "Management strongly feels that [Ms. Holley] was attempting to access Mr. Herrera's computer."

## *COUNT VI*

**Violation of State Law (OADA)**

Plaintiff incorporates all prior allegations and further alleges that:

85. In addition to being a violation of Federal Laws, discrimination based on either Sex or other provisions of Title VII, the discrimination is contrary to the Oklahoma Anti-Discrimination Act (OADA).

86. Plaintiff seeks declaratory judgment that defendants violated the OADA and the public policy of the State of Oklahoma as defined therein.

87. Plaintiff seeks damages for violation of the OADA, but only to the extent state law is NOT a duplication of the relevant Federal law or remedies.

88. Plaintiff seeks relief for discrimination on the basis of her Sex, Race, and Retaliation.

89. Plaintiff also seeks relief under state law to the extent that "Any other result would condone breach of a duty imposed by law on all employers -- the duty not to discharge an employee for attempting to correct an illegal or unethical act." Rosenfeld v. Thirteenth Street

Corp., 1989 Okla. LEXIS 105 (Okla. 1989) 4 I.E.R. Cas. (BNA) 770.

90. Plaintiff also requests relief under State law, which allows punitive damage, attorney fees and other remedies which are not authorized by Federal Law. Shirazi v. Childtime Learning Center, Inc., 2009 OK 13, 204 P.3d 75 (Okla. 2009).

63. To the extent that Defendants have attempted to justify termination of Plaintiff on certain criteria, they have established a high likelihood that all such purported reasons are pre-textual and as such constitute evidence of intentional discrimination, further Defendant's failed to abide by established policies thereby giving further evidence of intentional discrimination.

WHEREFORE, Plaintiff prays that she be awarded judgment against all defendants, jointly and severally, and all relief as may be appropriate, including, but not limited to actual damages, including lost wages, liquidated damages and front pay, and other benefits from working, non-economic damages, punitive damages, pre and post judgment interest, attorney fees, costs and any other different or additional relief as may be appropriate through law or equity.

                    Respectfully submitted,

                    WAGNER & WAGNER, P.C.
                    4401 N. Classen Blvd., Suite 100
                    Oklahoma City, OK 73118-5038
                    (405) 521-9499 Telephone
                    (405) 521-8994 Fax
                    rjw@wagnerfirm.com (e-mail)

                    *s/ Robert J. Wagner*

By:_____
    ROBERT J. WAGNER, OBA #016902
    ATTORNEY FOR
    TASHIANA HOLLEY - PLAINTIFF

**TRIAL BY JURY IS REQUESTED**